IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| IBRAHIMA DIENG, </br></br> Plaintiff, </br></br> v. </br></br> ORKIN, LLC, </br></br> Defendant. | ) </br> ) </br> ) </br> ) </br> ) Civil Action No. 21-cv-0482-LKG </br> ) </br> ) Date: February 4, 2025 </br> ) </br> ) </br> ) </br> ) |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

The Plaintiff, Ibrahima Dieng, brings this employment discrimination action against the Defendant, Orkin, LLC ("Orkin"), alleging failure to accommodate and intentional discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, arising from his employment with Orkin.  ECF No. 18.  The Defendant has moved for summary judgment in its favor on these claims, pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF Nos. 72 and 72-1.  The motion is fully briefed.  ECF Nos. 72, 72-1, 75, and 78.  No hearing is necessary to resolve the motion.  L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** the Defendant's motion for summary judgment and (2) **DISMISSES** the complaint.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

In this civil action, the Plaintiff, Ibrahima Dieng, claims that Orkin violated the Americans with Disabilities Act, by failing to accommodate his disability and by terminating his employment.  ECF No. 18.  Specifically, the Plaintiff alleges that Orkin failed to accommodate

---

[1] The facts recited herein are taken from the first amended complaint, the joint statement of undisputed facts, the joint record and Orkin's motion for summary judgment, the memorandum in support thereof, and the declarations and attachments thereto.  ECF Nos. 18, 72, 72-1, 72-2, 79.  Unless otherwise stated, the facts are undisputed.

his disability and subsequently discharged him, after he went on leave following a knee injury in 2016 and was released to return to work with "light duty" restrictions. *Id.* As relief, the Plaintiff seeks, among other things, reinstatement and to recover back pay, monetary damages and attorney's fees and costs from Orkin. *Id.* at 10-11.

## The Parties

Defendant Orkin is a pest control company that provides services to commercial and residential customers across the nation. ECF No. 72-2 at ¶¶ 1-2 (Joint Statement of Undisputed Facts). Orkin is a wholly-owned subsidiary of Rollins, Inc. *Id.*

Plaintiff Ibrahima Dieng is a former employee of Orkin who was employed as a pest control technician. *Id.* at ¶ 3.

## The Plaintiff's Employment History

In or about June 2009, the Plaintiff accepted employment with Western Industries North, LLC d/b/a Western Pest Services[2] ("Western") as a pest control technician. *Id*. at ¶ 3. The Plaintiff worked from Western's branch located in Gaithersburg, Maryland and he serviced buildings in Washington, D.C. and Maryland. *Id*.

Subsequent to his hire, the Plaintiff was transferred from Western to Orkin. *Id*. at ¶ 5. And so, the Plaintiff became employed by Orkin, and he remained employed with Orkin throughout his employment. *Id*.

The Plaintiff's duties as a pest control technician included, among other things, operating a company vehicle to drive to and from client buildings, mixing chemicals, inspecting the premises, placing and servicing rodent stations and applying chemicals to treat affected areas. *Id*. at ¶ 7. It is undisputed that the pest control technician position involves regular driving, walking, kneeling, stooping, bending, climbing, crawling, squatting, lifting weight (including ladders, equipment, chemical sprayers) up to and exceeding 50 pounds, carrying equipment, ascending and descending multiple floors of stairs, and other body positioning, ambulation and repetitive motion to perform the duties. *Id.* at ¶ 8.

In this regard, the job description for the pest control technician position provides that: "This position is classified as heavy work in as much as it requires exertion of up to 60 pounds of

---

[2] Western is a wholly-owned subsidiary of Rollins. ECF No. 72-2 at ¶ 4.

force." ECF No. 79 at 159. The position description also provides that a pest control technician must be able to lift and pour a 50-pound bag of material, lift and carry a 25-pound bag of material and place it in the back of a truck, lift a 50-pound chemical pack and carry it on his back, walk over various types of terrain and through plants and bushes, sit while driving, crawl for up to long periods of time, and access vehicles and confined spaces with entries of 37 inches vertical and 24 inches horizontal. *Id.* In addition, the duties section of the position description provides that technicians might move furniture and other customer property that might interfere with a thorough inspection and then return those items to their original location, and inspect exterior and interior areas of the building, including the basement, attic, crawlspace, etc. *Id.* at 158.

<u>The Plaintiff's 2013 And 2015 Knee Injuries And Periods Of Leave</u>

In or about July 2013, the Plaintiff suffered an injury to his left knee while working and he promptly informed Orkin of this injury. ECF No. 72-2 at ¶ 10. The Plaintiff continued to work following that injury for several months with a torn meniscus. *Id.* And so, the Plaintiff had surgery on his left knee in 2014, and he took leave under workers compensation from in or about March 2014 to June 2014. *Id.* It is undisputed that the Plaintiff applied for, and received, workers' compensation benefits arising from that injury and period of absence. *Id.* at ¶ 11.

In or around June 2014, the Plaintiff returned to work full duty. *Id.* at ¶ 12. But the Plaintiff suffered an injury to his right knee while working in or about May 2015. *Id*. at ¶ 13. The Plaintiff promptly informed Orkin of his knee injury, and he took leave under workers compensation from in or about May 2015 until November 2015. *Id.* The Plaintiff filed a workers' compensation claim arising from that injury and period of leave, and he received workers' compensation benefits. *Id.* at ¶ 14. The Plaintiff returned to work full duty in or around November 2015. *Id.* at ¶ 15.

On or about February 1, 2016, the Plaintiff re-injured his right knee while working and he promptly informed Orkin of his knee injury. *Id*. at ¶ 16. As a result of this injury, the Plaintiff took leave under workers compensation, during which he received medical treatment. *Id*. The Plaintiff also filed a workers' compensation claim arising from this injury and he received benefits. *Id.* at ¶ 17. With the exception of any workers' compensation benefits that he received, the Plaintiff's period of leave was unpaid. *Id.* at ¶ 18.

During the next several months, the Plaintiff and his branch manager, Blake Hunter, communicated with each other regularly about the Plaintiff's treatment and recovery status. *Id.* at ¶ 19. Mr. Hunter inquired as to Plaintiff's status so that he could plan on the Plaintiff's return to work, based upon the advice that the Plaintiff was receiving from his medical providers. *Id.* In this regard, the Plaintiff's treating physician issued notes, dated February 22, March 7, April 18, and June 1, 2016, which state that the Plaintiff was totally disabled and unable to work. *Id.* at ¶ 20. The Plaintiff submitted these medical notes to Orkin or its agent. *Id.* at ¶ 21.

On July 11, 2016, the Plaintiff's physician issued a medical note stating that the Plaintiff was released to work "light duty . . . if available, otherwise disabled." *Id.* at ¶ 22. The medical note also stated that the light duty restriction included a 20-pound lifting restriction and: "No repetitive stooping, bending, twisting or prolonged sitting or standing." *Id.* The Plaintiff submitted this medical note to Orkin or its agent. *Id.* at ¶ 23. Thereafter, Mr. Hunter informed the Plaintiff that he had no light duty positions available in the branch. *Id.* at ¶ 24.

The Plaintiff did not return to work at Orkin after his physician cleared him for light duty in July 2016, and he continued on unpaid leave. *Id.* at ¶ 25. On August 23, 2016, the Plaintiff underwent a functional capacity evaluation ("FCE"), and the FCE report provides that the Plaintiff "was able to tolerate LIGHT-MEDIUM physical demand" and that he "will benefit from continued Physical therapy for another 6-8 weeks following another FCE as per MD recommendation." *Id.* at ¶ 26.

On October 5, 2016, the Plaintiff's workers' compensation attorney sent a letter to Orkin's workers compensation claims management service (Sedgwick CMS) stating that:

> [The Plaintiff] presented himself to light duty on August 22, 2016 and was advised by his Employer that no light duty is available. In that regard, please continue paying Mr. Dieng temporary total disability benefits accordingly. Lastly, please advise my office in writing when light duty becomes available, as Mr. Dieng is eager to return to gainful employment.

*Id.* at ¶ 27. On November 7, 2016, the Plaintiff sent an email to Mr. Hunter stating, in part, that: "Any updates about a light duty position for me with the company?" *Id.* at ¶ 28. On the same day, Mr. Hunter responded "I don't anything about a light duty position." *Id.*

The Settlement Of The Plaintiff's Workers' Compensation Claims

In the late summer and fall of 2016, the parties engaged in settlement discussions to resolve the Plaintiff's three open workers' compensation claims. ECF No. 79 at 142-43. In

connection with the settlement of those claims, the Plaintiff and his attorneys received a total of $50,000, after June 2017, to conclude the settlement of the workers' compensation cases and file the necessary papers to close those cases with the Workers' Compensation Commission ("WCC"). ECF No. 72-2 at ¶ 31.

In this regard, the undisputed evidence shows that, Orkin's attorney, Patrick Tedesco, emailed the Plaintiff's attorney and offered to settle the Plaintiff's three worker's compensation three claims "for $18,000.00 with the execution of a General Release," on August 16, 2016. ECF No. 79 at 139, ¶ 4; 142. On October 12, 2016, the Plaintiff's attorney sent an email to Mr. Tedesco stating that:

> Pat, Claimant has been released to light duty and Er indicates it is not [sic] available. FCE confirmed light duty and voc is an option. However, Claimant [sic] has agreed to entertain settlement. Demand is 75K for all 3 cases.

ECF No. 79 at 143. And so, the parties continued settlement discussions for several weeks, during which the Plaintiff lowered his settlement demand to $50,000. *Id.* at 139, ¶ 5. And so, on January 3, 2017, Mr. Tedesco sent an email to the Plaintiff's attorney stating that Orkin accepted Plaintiff's $50,000 global settlement offer and that Orkin would require Plaintiff to sign a general release as a condition of settlement. *Id.*; *see also* ECF No. 79 at 144-45.

On February 14, 2017, a paralegal with the Plaintiff's attorneys' law firm emailed Mr. Tedesco the proposed WCC settlement agreement. *Id.* at 140, ¶ 6; 150. The settlement agreement did not include a general release signed by the Plaintiff. *Id.* at 146-50. And so, the parties communicated for several months about obtaining the general release. *Id.*

On June 8, 2017, the Plaintiff's law firm sent an email to Mr. Tedesco stating that: "Please find attached Mr. Dieng's resignation for your file and review." *Id.* at 140, ¶ 7; 154. A signed and notarized letter of resignation from the Plaintiff was attached to the email and the resignation letter states as follow:

> I, Ibrahima Dieng, solemnly swear and affirm, that I am resigning from Rollins, Inc. effective June 7, 2017. I further affirm that I have no intentions of filing any future workers' compensation claims, where Rollins, Inc. would be the employer.

*Id.* at 156.

With Orkin's authorization, Mr. Tedesco proceeded with the settlement of the Plaintiff's compensation claims in the WCC. *Id*. at 140, ¶ 9. And so, the Plaintiff and his attorneys received $50,000 from Orkin pursuant to the settlement agreement. ECF No. 72-2 at ¶ 31.

The Plaintiff's EEOC Charge

On March 13, 2017, the Plaintiff filed a charge of discrimination with the Maryland Commission on Civil Rights (the "MCCR"), which was cross-filed with the United Staes Equal Employment Opportunity Commission (the "EEOC"). *Id*. at 32. The charge alleges claims of race, sex and disability discrimination. *Id.* On May 25, 2017, the Plaintiff filed an amended charge of discrimination with the MCCR, which was cross-filed with the EEOC. *Id.* at ¶ 33; ECF No. 79 at 190-91. The amended charge alleges claims of race, sex and disability discrimination. *Id.*

On April 22, 2020, the MCCR issued a Written Finding in favor of Orkin, finding that there was no probable cause to believe that any unlawful discrimination occurred. ECF No. 79 at 193-97.

### B. Procedural History

The Plaintiff commenced this employment discrimination matter on February 23, 2021, and he subsequently amended the complaint on July 29, 2021. ECF Nos. 1 and 18.

On August 12, 2024, the Defendant filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof. ECF No. 72. On October 17, 2024, the Plaintiff filed a response in opposition to the Defendant's motion. ECF No. 75.

On November 18, 2024, the Defendant filed a reply brief. ECF No. 78. On November 25, 2024, the Defendant filed the joint record. ECF No. 79.

The Defendant's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

### III. LEGAL STANDARDS

### A. Rule 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they

may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

### B.  The ADA

The Americans with Disabilities Act prohibits an employer from discriminating against an employee with a disability if the employee can perform the essential functions of the job with "reasonable accommodation." 42 U.S.C. § 12112(a), (b)(5). To establish a claim for disability discrimination under the ADA, a plaintiff must plead facts showing that (1) he has a disability, (2) he is a "qualified individual" for the employment in question, and (3) the employer took an adverse employment action against him because of his disability. *Jacobs v. N.C. Admin. Office of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015). The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *see also Rohan v. Networks Presentations LLC*, 375 F.3d 266, 272-73 & n.9 (4th Cir. 2004).

The ADA incorporates by reference the administrative procedural requirements set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*. *See* 42 U.S.C. § 12117(a) (incorporating Title VII procedures); 42 U.S.C. § 2000e-5. Before bringing a civil action under

the ADA, a claimant must first file a timely charge of discrimination with the EEOC, or state deferral agency (including the MCCR) and exhaust the agency's administrative process. 42 U.S.C. § 2000e-5; *see also*, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012) (plaintiff must exhaust administrative remedies by filing charge with EEOC before pursuing ADA suit in court); *Chacko v. Patuxent Ins.*, 429 F.3d 505, 508-09 (4th Cir. 2005). The dual purposes of this requirement are to put the charged party on notice of the claims against it and to allow the agency to attempt voluntary conciliation with that party. *Chacko*, 429 F.3d at 510; *Talbot v. U.S. Foodservice, Inc.*, 204 F. Supp. 2d 881, 883 (D. Md. 2002). And so, the Court must dismiss a discrimination claim if the plaintiff has not exhausted the administrative process before bringing suit. *Chacko*, 429 F.3d at 513.

The Fourth Circuit has also made clear that the discriminatory acts alleged in a lawsuit must have been the subject of an earlier charge of discrimination. "A claim will . . . typically be barred if the administrative charge alleges one type of discrimination—such as discriminatory failure to promote—and the claim encompasses another type—such as discrimination in pay and benefits." *Chacko*, 429 F.3d at 509; *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963-64 (4th Cir. 1996); *Lawson v. Burlington Indus., Inc.*, 683 F.2d 862, 863-64 (4th Cir. 1982) (failure-to-hire claim dismissed because EEOC charge only alleged discriminatory layoff). And so, "[a] discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed . . . [I]t is merely an unfortunate event in history which has no present legal consequences." *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).

The EEOC charge must also be timely filed in the EEOC no later than 300 days following the alleged discriminatory act(s). *See* 42 U.S.C. § 2000e-5(e)(1); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998) (in a deferral state such as Maryland, EEOC charge must be filed within 300 days of alleged act of discrimination). Given this, alleged discriminatory acts that occurred more than 300 days prior to the filing of an EEOC charge may not be challenged under the ADA and must be dismissed. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (dismissing Title VII claims involving conduct that occurred more than 300 days before filing of charge); *Beall v. Abbott Labs.*, 130 F.3d 614, 619-20 (4th Cir. 1997) (dismissing claim where allegations occurred outside the mandatory limitations period);

8

*Evans*, 80 F.3d at 962-64 (plaintiff barred from pursuing discriminatory acts that occurred more than 300 days prior to filing of EEOC charge); *Kelly v. Berryhill*, No. 18-0049, 2019 U.S. Dist. LEXIS 47556, at *9 (D. Md. Mar. 20, 2019) ("alleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not subsequently be challenged in a Title VII suit" (citation omitted)). The mandatory dismissal of time-barred claims includes ADA claims of failure to accommodate, where the alleged failures to accommodate occurred more than 300 days prior to the charge. *See Kornmann v. City of N.Y. Bus. Integrity Comm'n*, 467 F. Supp. 3d 54, 6061 (E.D.N.Y. 2020) (granting summary judgment on ADA failure to accommodate claim where alleged failures to accommodate occurred more than 300 days before filing of EEOC charge); *Greer v. Bd. of Trs. of the Univ. of the D.C.*, No. 23-2296, 2024 U.S. Dist. LEXIS 35910, at *8-9 (D.D.C. Mar. 1, 2024) (dismissing ADA failure to accommodate claim where alleged failures occurred more than 300 days before charge).

A disability discrimination claim under the ADA may be proven through either direct and indirect evidence, or through the *McDonnell Douglas* burden-shifting framework. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49-50 & n.3 (2003). Relevant to this dispute, to prove a failure to accommodate claim under the ADA, a plaintiff must show that: (1) [he] had a disability within the statutory meaning; (2) the employer knew of [his] disability; (3) a reasonable accommodation would permit [him] to perform the essential functions of the position; and (4) the employer refused to make the accommodation." *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021). Even when a plaintiff makes this showing, the employer can still defeat the failure-to-accommodate claim by demonstrating that reasonable accommodation would impose an undue hardship. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 395 (2002) (quoting § 12112(b)(5)(A)).

In this regard, the Fourth Circuit has held that the "'ultimate discretion' to choose among reasonable accommodations rests with the employer." *Hannah v. UPS, Inc.*, 72 F.4th 630, 636 (4th Cir. 2023) (quoting *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415-16 (4th Cir. 2015) (quoting *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996))). The Fourth Circuit has also held that the ADA "specifically authorizes unpaid leave as a reasonable accommodation." *Id.* (citing 42 U.S.C. § 12111(9)(B) which provides that a "reasonable accommodation" may include "job restructuring, . . . modified work schedules, . . . and other similar accommodations"). Notably, the EEOC's regulatory guidance also permits "the use of

9

accrued paid leave or providing additional unpaid leave for necessary treatment." 29 C.F.R. pt. 1630, app. § 1630.2(o). And so, the Fourth Circuit has found a period of unpaid leave to be a reasonable accommodation, "where the disability that interferes with an employee's capacity to complete assigned tasks is temporary and there is reason to believe that a leave of absence will provide a period during which the employee will be able to recover and return to work." *Hannah*, 72 F.4th at 637.

The Fourth Circuit has also held that claims for reassignment under the ADA "must be handled with care because of reassignment's unique status under the law." *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1014 (4th Cir. 2020). In this regard, the Fourth Circuit has observed that "reassignment to a vacant position" appears in the middle of the ADA's undifferentiated list of possible accommodations. *Id.* But, reassignment is an accommodation of "last resort." *Id.* And so, reassignment is a "disfavored accommodation" that employers are generally under no obligation to offer. *Wirtes v. City of Newport News*, 996 F.3d 234, 240 (4th Cir. 2021).

## IV.  ANALYSIS

Orkin has moved for summary judgment on the Plaintiff's ADA claims, pursuant to Fed. R. Civ. P. 56, upon the following grounds: First, the Plaintiff's claims arising from his knee injuries in 2013 and 2015 are unexhausted and untimely. ECF No. 72-1 at 11-15. Second, the Plaintiff cannot establish a *prima facie* case for failure to accommodate, because: (a) the Plaintiff could not perform the essential duties of his position with or without reasonable accommodation; (b) Orkin reasonably accommodated the Plaintiff's disability with unpaid leave; and (c) the Plaintiff was not entitled to be reassigned. *Id.* at 15-27. Lastly, Orkin argues that the Plaintiff's discharge claim is untimely, and, even if this claim is timely, the Plaintiff cannot establish that Orkin discharged him. *Id.* at 27-29. And so, the Orkin requests that the Court enter summary judgment in its favor on the Plaintiff's claims. *Id.* at 30.

The Plaintiff counters that the Court should not enter summary judgment in Orkin's favor in this case, because: (1) Orkin could have reassigned him to another position as a reasonable accommodation; (2) a jury could reasonably infer intentional discrimination in this case; (3) he has not released his ADA claims; and (4) he has exhausted administrative remedies. ECF No. 75. And so, the Plaintiff requests that the Court deny Orkin's motion. *Id.* at 30.

For the reasons below, the undisputed material facts in this case show that the Plaintiff's claims arising from his knee injuries in 2013 and 2015 are untimely. The undisputed material facts also make clear that the Plaintiff cannot establish a *prima facie* case for failure-to-accommodate under the ADA, because the unrebutted evidence shows that he could not perform the essential duties of his potion with a reasonable accommodation and that Orkin reasonably accommodated his disability with unpaid leave prior to his resignation. In addition, the unrebutted evidence shows that the Plaintiff cannot establish that Orkin discharged him to prove his ADA discrimination claim based upon the termination of his employment. And so, the Court (1) GRANTS Orkin's motion for summary judgment and (2) DISMISSES the complaint.

### A. The Plaintiff's Claims Arising From His Knee Injuries In 2013 And 2015 Are Untimely

As an initial matter, the undisputed material facts in this case show that the Plaintiff's employment discrimination claims arising from his knee injuries in 2013 and 2015 are untimely. Before bringing a civil action under the ADA, the Plaintiff must first file a timely charge of discrimination with the EEOC, or state deferral agency (including the MCCR) and exhaust the agency's administrative process. 42 U.S.C. § 2000e-5; *see also*, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974); *Sydnor v. Fairfax County*, 681 F.3d 591, 593 (4th Cir. 2012) (plaintiff must exhaust administrative remedies by filing charge with EEOC before pursuing ADA suit in court); *Chacko v. Patuxent Ins.*, 429 F.3d 505, 508-09 (4th Cir. 2005). The EEOC charge must also be timely filed no later than 300 days following the alleged discriminatory act(s). *See* 42 U.S.C. § 2000e-5(e)(1); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998) (in a "deferral state" such as Maryland, EEOC charge must be filed within 300 days of alleged act of discrimination). And so, alleged discriminatory acts that occurred more than 300 days prior to the filing of a EEOC Charge may not be challenged under the ADA and must be dismissed. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207 (4th Cir. 2019) (dismissing Title VII claims involving conduct that occurred more than 300 days before filing of charge); *Beall v. Abbott Labs.*, 130 F.3d 614, 619-20 (4th Cir. 1997) (dismissing claim where allegations occurred outside the mandatory limitations period).

In the amended complaint, the Plaintiff alleges facts regarding his knee injuries, worker's compensation claims and leave that occurred in 2013 and 2015. ECF No. 18 at ¶¶ 9-17. To the extent that the Plaintiff asserts ADA claims based upon these events, these claims are time-barred, because they are based upon events that occurred more than 300 days before the Plaintiff

filed his EEOC charge on March 13, 2017. *See* ECF No. 72-2 at ¶¶ 32-33; ECF No. 79 at 188-89. (Showing that the Plaintiff filed his EEOC charge on March 13, 2017, and amended the charge on May 25, 2017). And so, the Court DISMISES these claims.

### B. The Plaintiff Cannot Establish A *Prima Facie* Case For Failure-To-Accommodate

Turning to the merits of the Plaintiff's failure-to-accommodate claim, the undisputed material facts show that he cannot establish a *prima facie* case to prevail on that claim for several reasons.

First, the undisputed material facts show that the Plaintiff could not perform the essential duties of his position with a reasonable accommodation. To prove a failure to accommodate claim under the ADA, the Plaintiff must show that: "(1) [he] had a disability within the statutory meaning; (2) the employer knew of [his] disability; (3) a reasonable accommodation would permit [him] to perform the essential functions of the position; and (4) the employer refused to make the accommodation." *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021). Should the Plaintiff make this showing, Orkin could still defeat a failure-to-accommodate claim by demonstrating that the reasonable accommodation would impose an undue hardship. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 395 (2002) (quoting § 12112(b)(5)(A)).

In this regard, the Fourth Circuit has held that the "'ultimate discretion' to choose among reasonable accommodations rests with the employer." *Hannah v. UPS, Inc.*, 72 F.4th 630, 636 (4th Cir. 2023) (quoting *Reyazuddin v. Montgomery Cnty.*, 789 F.3d 407, 415-16 (4th Cir. 2015) (quoting *Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996))). The Fourth Circuit has also held that the ADA "specifically authorizes unpaid leave as a reasonable accommodation." *Id.* (citing 42 U.S.C. § 12111(9)(B) which provides that a "reasonable accommodation" may include "job restructuring, . . . modified work schedules, ... and other similar accommodations"). And so, the Fourth Circuit has found a period of unpaid leave to be a reasonable accommodation, "where the disability that interferes with an employee's capacity to complete assigned tasks is temporary and there is reason to believe that a leave of absence will provide a period during which the employee will be able to recover and return to work." *Hannah*, 72 F.4th at 636.

In addition, the Fourth Circuit has held that claims for reassignment under the ADA "must be handled with care because of reassignment's unique status under the law." *Elledge v. Lowe's Home Centers, LLC*, 979 F.3d 1004, 1014 (4th Cir. 2020). In this regard, the Fourth

12

Circuit has observed that reassignment is an accommodation of "last resort." *Id.* And so, reassignment is a "disfavored accommodation" that employers are generally under no obligation to offer. *Wirtes v. City of Newport News*, 996 F.3d 234, 240 (4th Cir. 2021).

In this case, the undisputed material facts make clear that the Plaintiff could not perform the essential functions of his position as a pest control technician, due to his knee injury. To determine the essential functions of this position, the Court looks to the position description for this job. The job description for the pest control technician position provides that: "This position is classified as heavy work in as much as it requires exertion of up to 60 pounds of force." ECF No, 79 at 159. The position description also provides that a pest control technician must be able to lift and pour a 50-pound bag of material, lift and carry a 25-pound bag of material and place it in the back of a truck, lift a 50-pound chemical pack and carry it on his back, walk over various types of terrain and through plants and bushes, sit while driving, crawl for up to long periods of time, and access vehicles and confined spaces with entries of 37 inches vertical and 24 inches horizontal. *Id.* In addition, the duties section of the position description provides that a Pest Control Technician might need to move furniture and other customer property that might interfere with a thorough inspection and then return those items to their original location, and inspect exterior and interior areas of the building, including the basement, attic, crawlspace, etc. *Id.* at 158.

It is undisputed in this case that the Plaintiff's physician issued a medical note stating that the Plaintiff was released to work "light duty . . . if available, otherwise disabled," on July 11, 2016, following the Plaintiff's 2016 knee injury. ECF No. 72-2 at ¶ 22. This medical note also makes clear that the Plaintiff was under a 20-pound lifting restriction and that "[n]o repetitive stooping, bending, twisting or prolonged sitting or standing" would be permitted. *Id.*; *see also* ECF No. 79 at 334. On August 23, 2016, the Plaintiff also underwent a functional capacity evaluation ("FCE") and the FCE report provides that the Plaintiff "was able to tolerate LIGHT-MEDIUM physical demand" and that he "will benefit from continued Physical therapy for another 6-8 weeks following another FCE as per MD recommendation." ECF No. 72-2 at ¶ 26.

Given these undisputed facts, the evidence makes clear that the Plaintiff could not perform the essential functions of the pest control technician position, which involved "heavy work" and physical activity, including lifting a 50-pound bag of material and prolonged standing, with a reasonable accommodation. And so, the Plaintiff cannot show that a reasonable

accommodation would have permitted him to perform the essential functions of this position following his 2016 knee injury, to prove his failure-to accommodate claim. For this reason, the Court must GRANT Orkin's motion for summary judgment on this claim.

Even if the Plaintiff could show that a reasonable accommodation would permit him to perform the essential functions of a pest control technician, the undisputed material facts also show that Orkin reasonably accommodated the Plaintiff's disability by permitting him to take unpaid leave for several months. As discussed above, the "'ultimate discretion' to choose among reasonable accommodations rests with the employer." *Hannah*, 72 F.4th at 636 (quoting *Reyazuddin*, 789 F.3d at 415-16 (quoting *Hankins*, 84 F.3d at 800)). And so, the Fourth Circuit has also held that the ADA "specifically authorizes unpaid leave as a reasonable accommodation." *Id.* (citing 42 U.S.C. § 12111(9)(B) which provides that a "reasonable accommodation" may include "job restructuring, . . . modified work schedules, . . . and other similar accommodations"). The Fourth Circuit has also found a period of unpaid leave to be a reasonable accommodation, "where the disability that interferes with an employee's capacity to complete assigned tasks is temporary and there is reason to believe that a leave of absence will provide a period during which the employee will be able to recover and return to work." *Hannah*, 72 F.4th at 636.

In this case, there is no dispute that Orkin allowed the Plaintiff to take unpaid leave from work after he injured his knee in 2016. Notably, the undisputed material facts show that the Plaintiff re-injured his right knee while working on or about February 1, 2016, and that the Plaintiff took unpaid leave immediately thereafter, until the termination of his employment in 2017. ECF No. 72-1 at ¶¶ 16-18. It is also undisputed that the Plaintiff and his branch manager, Blake Hunter, regularly communicated about the Plaintiff's treatment, recovery status and return to work plans, during this period of unpaid leave. *Id*. at ¶ 19.

There is also no dispute that the Plaintiff did not return to work after his physician cleared him for light duty work in July 2016, and that the Plaintiff continued on unpaid leave. *Id*. at ¶ 25. Given this, the undisputed evidence shows that Orkin accommodated the Plaintiff's disability due to knee injury by permitting him to take unpaid leave from approximately February 2016 until he left his position with Orkin in June 2017.

Orkin persuasively argues that this accommodation was reasonable under the ADA. While the Plaintiff ultimately did not return to work and remained on unpaid leave for

approximately 17 months, the evidence shows that both the Plaintiff and Orkin initially anticipated that the Plaintiff would return to work during the summer of 2016.  ECF No. 72-2 at ¶¶ 19-27; *see also* ECF No. 79 at 54, 197-200 (Plaintiff testifying that he sought to return to work in a light duty position); ECF No. 79 at 137, ¶ 6 (Blake Hunter stating in sworn affidavit that he believed that the Plaintiff's leave was temporary and that he would return to work).  Give this, the evidence shows that the parties' expectation was that the Plaintiff's leave status would be temporary.

The undisputed material facts also make clear that the parties began settlement discussions in the late summer and fall of 2016, after it became apparent that the Plaintiff would not return to work.  ECF No. 79 at 142-43.  These undisputed material facts show that Orkin reasonably extended the Plaintiff temporary unpaid leave as a reasonable accommodation, until it was clear that the Plaintiff would not be returning to work.  And so, the undisputed material facts show that Orkin provided the Plaintiff with a reasonable accommodation under the ADA.

The Plaintiff's arguments to show that Orkin failed to provide a reasonable accommodation are also unconvincing.  The Plaintiff first argues that unpaid leave was not a reasonable accommodation, because Orkin had an obligation to reassign him to another position that would allow for light duty work.  ECF No. 75 at 14-20.  To support this argument, the Plaintiff alleges that there were several "suitable vacancies," for either sales representative or customer service specialist positions, to which he could have been reassigned and that Orkin reassigned another employee as a reasonable accommodation in 2016.  ECF No. 75 at 18-19.

But, the Court agrees with Orkin that there was no obligation for Orkin to reassign the Plaintiff to another position.  Indeed, as the Fourth Circuit has observed, reassignment can be a reasonable accommodation under the ADA, but it is an accommodation of "last resort."  *Elledge*, 979 F.3d at 1014; *see also Wirtes*, 996 F.3d at 240.  Because the Plaintiff cannot show that Orkin had an obligation to reassign him to a different position under the ADA, he cannot prove that Orkin refused to make a reasonable accommodation in violation of the ADA. [3]

---

[3] Even if Orkin had such a duty, the Plaintiff fails to identify a specific open position for which he could have performed the essential functions of the position and been reassigned.  ECF No. 75 at 16-20; *see also* ECF No. 79 at 136, ¶ 4 (Blake Hunter stating that the only branch position that could have been performed with light duty restriction was customer service specialist and no vacancies existed when the Plaintiff was placed on light duty restriction).

### C. The Unrebutted Evidence Shows That Orkin Did Not Discharge The Plaintiff

As a final matter, the undisputed material facts also show that the Plaintiff cannot prevail on his ADA discrimination claim based upon the termination of his employment.[4] To prevail on this claim, the Plaintiff must prove that: (1) he is within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001). But, the Plaintiff cannot establish the second element of this claim here, because there can be no genuine dispute that Orkin did not discharge the Plaintiff from his position.

In this regard, the unrebutted evidence shows that the parties began settlement discussion in the fall of 2016 to resolve the Plaintiff's three open workers' compensation claims. ECF No. 79 at 142-43. In connection with the settlement of those claims, the Plaintiff and his attorneys received a total of $50,000, after June 2017, to conclude the settlement of the workers compensation cases and file the necessary papers to close those cases with the Workers' Compensation Commission ("WCC"). ECF No. 72-2 at ¶ 31. It is also undisputed that the Plaintiff's law firm sent an email to Orkin's counsel on June 8, 2017, stating that: "Please find attached Mr. Dieng's resignation for your file and review." ECF No. 79 at 154, 156. The signed and notarized letter states that:

> I, Ibrahima Dieng, solemnly swear and affirm, that I am resigning from Rollins, Inc. effective June 7, 2017. I further affirm that I have no intentions of filing any future workers' compensation claims, where Rollins, Inc. would be the employer.

*Id*. at 156.

The Plaintiff argues that he does not remember signing this letter. ECF No. 75 at 17. But he provides no evidence to show that he did not voluntarily resign from his position with Orkin on June 7, 2017, pursuant to the parties' settlement agreement. *Id*. Given this, the Plaintiff cannot establish the elements of his ADA discrimination claim based upon the termination of his

---

[4] Orkin argues with some persuasion that this claim is unexhausted. ECF No. 72-1 at 27-28. The Court will, however, accept that the Plaintiff's ADA discharge claim is properly brought for the purpose of resolving the pending motion for summary judgment.

employment. And so, the Court also GRANTS Orkin's motion for summary judgment on this claim.

## V. CONCLUSION

In sum, the undisputed material facts in this case show that the Plaintiff's disability discrimination claims arising from his knee injuries in 2013 and 2015 are untimely. The undisputed material facts also make clear that the Plaintiff cannot establish a *prima facie* case for failure-to-accommodate under the ADA, because the unrebutted evidence shows that he could not perform the essential duties of his potion with a reasonable accommodation and that Orkin reasonably accommodated the Plaintiff's disability with unpaid leave prior to his resignation.

In addition, the unrebutted evidence shows that the Plaintiff cannot establish that Orkin discharged him, to prove his ADA discrimination claim. And so, for the foregoing reasons, the Court:

      (1) **GRANTS** the Defendant's motion for summary judgment; and

      (2) **DISMISSES** the complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

                                                    s/ Lydia Kay Griggsby
                                                    LYDIA KAY GRIGGSBY
                                                    United States District Judge